Present: All the Justices

BOBBIE M. DUGAN

OPINION BY

v. Record No. 000023    CHIEF JUSTICE HARRY L. CARRICO

January 12, 2001

HELEN I. CHILDERS

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Henry E. Hudson, Judge

In this equity proceeding, Bobbie M. Dugan (Bobbie), former spouse of Marvin E. Childers (Marvin), a retired member of the United States Army, seeks to impose a constructive trust upon survivor benefits received by Helen I. Childers (Helen), Marvin's surviving spouse. From a final decree granting summary judgment in favor of Helen, we awarded Bobbie this appeal.

It appears from the record that Bobbie and Marvin were married July 29, 1951. He retired from the United States Army on July 28, 1975, naming Bobbie as the recipient of his retirement benefits in the event he predeceased her. They separated November 15, 1986, and were divorced by final decree of the Circuit Court of Fairfax County entered December 28, 1987.

The divorce decree incorporated, ratified, and confirmed a property settlement agreement Bobbie and Marvin entered into on December 4, 1986. The agreement stipulated that Bobbie was entitled to one-half of Marvin's retirement benefits. Marvin agreed he would assign to Bobbie one-half of his income from the

benefits and would notify "the Army Retirement for this purpose." He also agreed to assign and nominate Bobbie "as his beneficiary for the purposes of survivor benefits under the terms of his military retirement."

Marvin married Helen in "approximately May, 1994." Shortly thereafter, he changed his retirement benefits to name Helen as the survivor beneficiary.

On September 27, 1996, the Circuit Court of Fairfax County found Marvin guilty of civil contempt. He was directed to change his survivor beneficiary from Helen to Bobbie.

Later in 1996, Marvin was hospitalized with cancer. He died July 27, 1997, without having changed his survivor beneficiary from Helen to Bobbie. Helen has been receiving survivor benefits since Marvin's death.

Several provisions of federal statutory law are pertinent to disposition of this appeal. Under the Survivor Benefit Plan (SBP) established by 10 U.S.C. §§ 1447-1455, a military retiree, following entry of a final decree of divorce, may elect to provide an annuity to a former spouse. 10 U.S.C. § 1448(b)(3)(A)(II). The election must be in writing, signed by the person making the election, and received by the secretary of the appropriate branch of the military service within one year after the date of the decree of divorce. 10 U.S.C. § 1448(b)(3)(A)(II)(iii).

When a military retiree, incident to a divorce proceeding, enters into a written agreement to elect to provide an annuity to a former spouse and the agreement is incorporated into a court order or the retiree is required by a court order to make such an election but fails or refuses to do so, 10 U.S.C. § 1450 (f)(3) becomes applicable.  In such a situation, the retiree is deemed to have made the election, provided the secretary of the appropriate branch of the military service receives from the former spouse a written request, together with a copy of the court order, that such an election be deemed to have been made. 10 U.S.C. § 1450(f)(3)(A)(i) and (ii).  Importantly, the request from the former spouse must be received by "the Secretary concerned" within one year of the date of the court order.  10 U.S.C. § 1450(f)(3)(C).

Finally, 10 U.S.C. § 1450 includes what Helen refers to as a "non-alienation" provision.  In relevant part, this provision states that "an annuity under this section is not assignable or subject to execution, levy, attachment, garnishment, or other legal process."  10 U.S.C. § 1450(i).

Bobbie concedes that neither she "nor anyone on her behalf notified the Army of the provisions of the agreement within one year of the entry of the divorce decree in order for her to qualify as the 'Deemed Spouse' under the provisions of 10 U.S.C. § 1450."  Bobbie also concedes that the material facts were not

3

in dispute when the trial court considered Helen's motion for summary judgment.

In the hearing on the motion, Helen argued that the federal law expressed in 10 U.S.C. § 1450 preempts state law on the subject of a former spouse's entitlement to the survivor benefits of a military retiree and that Bobbie's failure timely to request a deemed election barred her recovery on a theory of constructive trust. The trial court held state law was preempted and Bobbie was barred from recovery.

Bobbie disagrees and argues that state law, rather than federal law, generally controls in the area of domestic relations. As a result, Bobbie opines, when Marvin failed to name her as his survivor beneficiary after he had been held in contempt for failing to designate her, he lost the right to name any other survivor beneficiary.

Bobbie cites two of this Court's prior decisions as examples of the "balance" she says we have recognized in "these sorts of claims." See Jones v. Harrison, 250 Va. 64, 458 S.E.2d 766 (1995) (husband's undertaking in property settlement and support agreement to provide certain life insurance benefits for children of former marriage sufficient to impose constructive trust on proceeds in hands of surviving spouse named as beneficiary in replacement policies); Southerland v. Southerland, 249 Va. 584, 457 S.E.2d 375 (1995) (wife's release

4

in property settlement agreement of all right, title, and interest in property of husband effective to relinquish any interest she may have had arising from his life insurance contract despite fact he had not removed her as beneficiary before his death.

Neither Southerland nor Jones is apposite. Both relate to property settlement agreements involving private insurance contracts; neither involves the provisions of a survivors' benefit plan governed by federal law and neither presents a question of federal preemption of state law.

Concerning preemption in general, the Supreme Court has said that "[i]f Congress evidences an intent to occupy a given field, any state law falling within that field is pre-empted." Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248 (1984). With respect to domestic relations law, the Court has said that "state interests . . . in the field of family and family-property arrangements . . . should be overridden . . . only where clear and substantial interests of the National Government . . . will suffer major damage if the state law is applied." United States v. Yazell, 382 U.S. 341, 352 (1966). "The pertinent questions are whether the right as asserted conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal

5

program to require nonrecognition." Hisquierdo v. Hisquierdo, 439 U.S. 572, 583 (1979).

This Court has not previously considered the question whether 10 U.S.C. § 1450 preempts the law of this Commonwealth on the subject of a former spouse's entitlement to the survivor's benefits of a military retiree. Nor is there an abundance of authority elsewhere.

The Court of Appeals of Georgia considered the question in King v. King, 483 S.E.2d 379 (Ga. App. 1997), where the trial court had imposed a constructive trust on annuity benefits being paid to the surviving spouse of a military retiree in a factual situation virtually identical to the scenario at hand. The Georgia court reversed, observing that while, under state law, "the SBP annuity was marital property subject to equitable distribution by the trial court[,] . . . the right to claim entitlement to an SBP annuity is also governed by and subject to conditions set forth in the SBP at 10 U.S.C. §§ 1447-1455." 483 S.E.2d at 382. The court then held as follows:

> The right to the annuity asserted by [the former spouse] pursuant to the divorce decree clearly conflicts with the express provisions of the SBP under which [the military retiree's] surviving spouse is the beneficiary of the annuity. In providing the means by which former spouses may become entitled to SBP annuity benefits, Congress enacted plain and precise statutory language placing conditions and limits on that right and made clear that any annuity benefits paid in compliance with the provisions of the SBP are not subject to legal process. Since the provisions of the SBP unambiguously preclude the

6

> rights asserted under the divorce decree, we further conclude that the consequences of enforcing the conflicting state law principles sufficiently injures the objectives of the SBP so that federal law preempts the authority of state law.

Id. at 383.

The Court of Appeals of South Carolina, in another factual situation on all fours with the present case, has also considered the question whether 10 U.S.C. § 1450 preempts state law on the subject of a former spouse's entitlement to the survivor's benefits of a military retiree. In denying the prayer of a former spouse for the imposition of a constructive trust, the court stated in Silva v. Silva, 509 S.E.2d 483 (S.C. App. 1998), that it found "the reasoning of the Georgia court [in King] persuasive" and concluded "that the provisions of the SBP make clear Congress's intention to occupy the field under these particular circumstances." 509 S.E.2d at 485.[1]

We also find the reasoning of the Georgia court persuasive. However, we would stress several points discussed in the portion of the court's opinion quoted above. First, the court stated that "[i]n providing the means by which former spouses may become entitled to SBP annuity benefits, Congress enacted plain

---

[1] Bobbie argues King and Silva are distinguishable because in neither case was the military retiree found in contempt of court while, here, Marvin was found in contempt. However, this is a distinction without a difference. Whether a military retiree is found in contempt of court for failing to notify the appropriate

7

and precise statutory language placing conditions and limits on that right." 483 S.E.2d at 383. In this situation, the following rule becomes applicable:

> When a special limitation is part of the statute creating the substantive right, the limitation is not merely a procedural requirement, but a part of the newly created substantive cause of action. The special limitation is a condition precedent to maintaining the claim and failure to comply with it bars the claim.

Sabre Constr. Corp. v. County of Fairfax, 256 Va. 68, 72, 501 S.E.2d 144, 147 (1998)(citation omitted). Hence, when Bobbie failed to notify the Army of the provisions of her property settlement agreement within one year of the date of her divorce decree, her claim for survivor's benefits was barred and could not form the basis for the imposition of a constructive trust.

Second, the Georgia court stated that "[i]n providing the means by which former spouses may become entitled to SBP annuity benefits, Congress . . . made clear that any annuity benefits paid in compliance with the provisions of the SBP are not subject to legal process." 483 S.E.2d at 383. The reference to "legal process" comes, of course, from what Helen terms the "non-alienation" provision of 10 U.S.C. § 1450, which states that "an annuity under this section is not . . . subject to execution, levy, attachment, garnishment, or other legal process." 10 U.S.C. § 1450(i).

---

secretary has nothing to with whether state law is preempted in

The "non-alienation" provision would be sufficient alone to require a finding of preemption in this case. Explaining the effect of a similar provision contained in the Railroad Retirement Act, the Supreme Court said "[i]t pre-empts all state law that stands in its way," protecting "the benefits from [the] legal process" of any state. Hisquierdo, 439 U.S. at 584.

Clearly, the term "other legal process" contained in 10 U.S.C. § 1450(i) encompasses the imposition of a constructive trust upon annuity benefits. A constructive trust is just as effective in thwarting the purposes of an annuity as an execution, levy, attachment, or garnishment, and the "non-alienation" provision is intended to protect federal annuity benefits from all such legal processes.

Finally, the Georgia court concluded that "the consequences of enforcing the conflicting state law principles sufficiently injure[s] the objectives of the SBP so that federal law preempts the authority of state law." 483 S.E.2d at 383. We think this conclusion is amply supported. To award Bobbie the survivor's benefits she seeks would seriously conflict with and effectively cancel both the "plain and precise" one-year limitation Congress placed on a former spouse's right to claim the benefits and the clear prohibition against subjecting an annuity to legal process.

_____

a given case.

9

Bobbie submits, however, that "[o]ther state courts have held that under certain circumstances, the provisions of 10 U.S.C. § 1450 do not preempt state law."  Bobbie cites Kenny v. Kenny, 627 A.2d 426 (Conn. 1993), and Balderson v. Balderson, 896 P.2d 956 (Idaho 1995).  But neither case considered 10 U.S.C. § 1450 or an SBP.  Indeed, neither opinion even mentions § 1450 or an SBP.

Kenny and Balderson both dealt with 10 U.S.C. § 1408, which embodies the Uniformed Services Former Spouses' Protection Act (USFSPA), enacted by Congress in 1982 in response to the Supreme Court's decision in McCarty v. McCarty, 453 U.S. 210 (1981).  In McCarty, the Supreme Court held that California's community property law was preempted because "the application of community property law conflicts with the federal military retirement scheme," id. at 223, and "the application of community property principles to military retired pay threatens grave harm to 'clear and substantial' federal interests," id. at 232.

With the enactment of the USFSPA, "any court of competent jurisdiction," including a court of competent jurisdiction "of any State," 10 U.S.C. § 1408(a)(1)(A), may now "treat disposable retired pay . . . either as property solely of the member or as property of the member and his spouse in accordance with the law

of the jurisdiction of such court," 10 U.S.C. § 1408(c).[2] However, as the Georgia court pointed out in King, "nothing in the [US]FSPA or subsequent amendments grants the same power to the states with respect to the award of annuity benefits for former spouses under the SBP." 483 S.E.2d at 382-83. Hence, Kenny and Balderson do not support Bobbie's position that the provisions of 10 U.S.C. § 1450 do not preempt state law.

For the reasons assigned, we will affirm the judgment of the trial court.

Affirmed.

---

[2] Under Va. Code § 20-107.3(G)(1), "[t]he court may direct payment of a percentage of the marital share of any pension, profit-sharing or deferred compensation plan or retirement benefits, whether vested or nonvested, which constitutes marital property and whether payable in a lump sum or over a period of time."